IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HAMMEL J. CLARK,  *

    Petitioner,  *

v.  *   Civ. No. DLB-21-2642

THOMAS WOLFE, Warden, *et al.*,  *

    Respondents.  *

**MEMORANDUM OPINION**

Self-represented petitioner Hammel J. Clark filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state conviction. ECF 1. The respondents assert that the petition is time-barred. ECF 5. Pursuant to *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002), Clark was afforded an opportunity to explain why his petition should not be dismissed as time-barred. ECF 6. Clark responded that he suffers from mental illness and is ignorant of the law and that his trial attorney was responsible for the delay in his filing. ECF 7. Clark later filed a motion to amend in which he states that he has been accepted into a drug treatment program. ECF 9. No hearing is necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Loc. R. 105.6 (D. Md. 2021); 28 U.S.C. §2254(e)(2). For the following reasons, the motion to amend is granted, Clark's petition is dismissed as untimely, and a certificate of appealability shall not issue.

**I.  Background**

On November 5, 2008, Clark entered an *Alford* plea to first-degree rape in the Circuit Court for Baltimore County, Maryland, Case No. 03-K-07-004551. An *Alford* plea "permits a criminal defendant to enter the equivalent of a guilty plea by admitting there is enough evidence to convict him at trial, but maintaining his innocence." *Clair v. Maynard*, 812 F. Supp. 2d 685, 687 (D. Md.

2011) (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)).  The following facts are taken from the prosecution's description of what the State would have proven at trial.  *See* ECF 5-2, at 30–35.

In the early morning of February 13, 1991, the victim, a married mother of two, headed to work at a Hampton Inn located in Baltimore County.  To get to work, she had to take two buses, transferring between them while it still was dark outside.  While changing buses, she noticed an individual following behind her.  As she got up to exit the second bus, the individual said "hey, shorty, wait up, don't get off the bus."  She ignored him and exited the bus.

The victim started walking to the Hampton Inn.  She was carrying her purse, as well as several personal items and her uniform.  Someone approached her from behind and placed her in a headlock.  It still was dark outside, and there was no one around to help.  The man threatened that if she moved, he would blow her head off.  She believed that he had a gun.  He demanded money and jewelry.  Maintaining the headlock, he forcibly moved her into a clearing in a wooded area between the bus stop and the hotel.  After rifling through the victim's possessions, the man pushed her onto the ground.  He partially removed her clothing and forcibly raped her.  After, the man again searched through her possessions and took several items and some cash.  He told the victim not to follow him and left the clearing.

The victim ran to the hotel and called 911.  First responders transported her to a hospital for a SAFE exam.  The victim's clothing and underwear were collected and stored in the Baltimore County Crime Lab.  Approximately fifteen years later, after DNA testing had become widespread, the Crime Lab tested a cutting from the victim's underwear.  The cutting tested positive for semen and was sent for further testing.  Analysts subsequently extracted a DNA profile from the sperm fraction of the sample.  Law enforcement entered the sample into a database of DNA profiles and developed Clark as a suspect.

Pursuant to a search warrant, law enforcement retrieved DNA swabs from Clark. They also retrieved another DNA sample from the victim for comparison purposes. The new samples were compared to the DNA found on the victim's underwear. Clark's DNA matched the unknown profile to a reasonable degree of scientific certainty.

On October 9, 2007, Clark was charged with first- and second-degree rape, first- and second-degree sexual offense, robbery, and armed robbery. ECF 5-1, at 1–2. At Clark's *Alford* plea, defense counsel agreed that the State could prove all elements of the charge of first-degree rape. ECF 5-2, at 35. The court found the facts sufficient and accepted Clark's *Alford* plea. *Id.* at 35–36. The court proceeded to sentencing that same day and sentenced Clark to 20 years' incarceration consecutive to any other sentence he then was serving. *Id.* at 45–46. A revised commitment order was entered on November 21, 2008. ECF No. 5-1, at 4. Clark did not appeal.

On September 18, 2018, Clark initiated state post-conviction proceedings. *Id.* The state court held a hearing on the petition before denying relief in a written opinion issued on March 17, 2021. *Id.* at 6. The Maryland Appellate Court (then the Court of Special Appeals) denied Clark's application for leave to appeal on August 31, 2021. ECF 1, at 4.

Clark filed this federal habeas petition on or around October 11, 2021. ECF 1, at 47; *see* Rule 3(d), *Rules Governing Section 2254 Proceedings in the United States District Courts* (mandating prison-mail box rule); *Houston v. Lack*, 487 U.S. 266 (1988). Clark's claims are numerous and wide-ranging, but they center on the perceived ineffectiveness of his trial counsel, deficiencies relating to a mental health evaluation and the preparation of an associated report, and the post-conviction court's handling of certain issues with Clark's appointed post-conviction counsel. ECF 1. The respondents interpreted Clark's claims as follows:

1. "Ground One" – Trial counsel was ineffective in connection with having Clark evaluated by the mental health department for a not criminally responsible (NCR) motion. (ECF 1 at 6).
2. "Ground Two" – Trial counsel was ineffective by not following court orders related to a mental health evaluation. (ECF 1 at 9).
3. "Ground Three" – Trial counsel was ineffective and, with Dr. J. Emmet Burke, prevented Clark from receiving treatment instead of prison time. (ECF 1 at 11).
4. "Ground Four" - The post-conviction court erred in denying his request for a transcript, and gave special treatment to Clark's post-conviction counsel, whom Clark discharged from his case. (ECF 1 at 13).
5. "Ground Five" - The post-conviction court erred in not finding that his post-conviction counsel was ineffective. (ECF 1 at 14).

In addition to the five "Grounds" stated by Clark, he makes various other claims. He claims:

A. Dr. Burke had no connection to the agency or departments for which he did an evaluation. (ECF 1 at 15, 24-29, 34, 39).
B. Dr. Burke and trial counsel violated Clark's HIPAA rights. (ECF 1 at 16, 26-27).
C. Trial counsel put forth a phantom defense instead of properly representing Clark and consulting with him about the NCR plea. (ECF 1 at 17, 35).
D. Dr. Burke committed medical malpractice. (ECF 1 at 17, 34).
E. The actions of trial counsel and Dr. Burke prevented Clark from getting help and drug treatment. (ECF 1 at 17-18).
F. Dr. Burke committed fraud and intentionally misled Clark. (ECF 1 at 18, 24).
G. Trial counsel did not tell him that, to plead guilty, he had to withdraw his NCR plea. (ECF 1 at 21, 35).
H. The trial judge and trial counsel pressured Clark to plead guilty instead of pursuing the NCR plea. (ECF 1 at 22, 25, 30-32, 34).
I. Trial counsel committed fraud and abandoned Clark and paid for a "botched" evaluation performed by Dr. Burke. (ECF 1 at 36, 38-39, 39-40).
J. Dr. Burke's evaluation did not reflect facts about Clark's childhood and life, including abandonment by his mother, being in foster care, suicide attempts, drug use, etc. (ECF 1 at 37).
K. Post-conviction counsel's performance was ineffective, and the post-conviction court erred in denying Clark's request for a transcript that would have proven that claim of ineffective assistance of counsel. (ECF 1 a 41, 43).
L. Post-conviction counsel refused to subpoena Dr. Burke and trial counsel and "shot down . . . every line of defense." (ECF 1 at 42).
M. The state courts have wrongly denied his requests for a transcript. (ECF 1 at 44).

See ECF 5, at 7–10. The respondents reserve their arguments on the merits of Clark's petition, arguing instead that it is time-barred.

**II.     Standard of Review**

A one-year limitations period applies to petitions filed pursuant to 28 U.S.C. § 2254, counting down from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The limitations period is subject to tolling in certain circumstances.  The habeas statute provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).  In other words, the federal clock is paused during the pursuit of state post-conviction relief, assuming the application for state post-conviction relief was properly filed.

The limitations period is also subject to equitable tolling "in those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000))).  To equitably toll the limitations period, the habeas petitioner must demonstrate "(1) that he has been pursuing his rights

5

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citations and quotation marks omitted). Extraordinary circumstances may involve "wrongful conduct" on the part of the government or other circumstances beyond the petitioner's control. *Harris*, 209 F.3d at 330 (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).

The Court may review an untimely petition in circumstances where the limitations period is not subject to tolling "only when there has been a 'fundamental miscarriage of justice.'" *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).

**III.   Analysis**

**A.  Motion to Amend**

Clark filed a letter styled as a "Motion to Amend" on June 3, 2022. ECF 9. In his letter, Clark refers to his "acceptance" into a drug treatment program outside of prison and his efforts to secure parole. He seems to request some relief other than amendment to his petition, but he does not clearly state what exactly he is requesting. *See id.* at 5 (requesting the Court "allow Petitioner's debt to be paid and that Petitioner move forward with his life"). He attaches several letters from members of the public and certificates he has received while incarcerated, documents from his plea and a parole proceeding, and commentary on a proposed revision to Maryland's sentencing laws. To the extent Clark requests to amend his petition to include new factual allegations or claims referred to in his letter, his request is granted. The Court considers the motion to amend

6

and attachments, ECF 9, as part of Clark's request for habeas relief.  To the extent he requests some other relief, such as a modification to his sentence, his request is denied without prejudice.

### B. Statute of Limitations

In this case, the one-year limitations period runs from the date on which the judgment became final.  Clark pleaded guilty on November 5, 2008.  He had 30 days from that date to seek leave to appeal.  *See* Md. Rule 8-204(b)(2).  The 30-day period expired on December 5, 2008, and Clark's conviction became final on that date.  28 U.S.C. § 2244(d)(1)(A); *see Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding a judgment that is not reviewed by the United States Supreme Court "becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires").  Clark does not argue the limitations period should run from a later date.  Thus, the one-year limitations period expired on December 5, 2009.  Because December 5, 2009 was a Saturday, Clark had until the following Monday to file a petition for federal habeas relief.  *See Rouse*, 339 F.3d at 244 (citing Fed. R. Civ. P. 6(a)).

Clark did not file a petition for federal habeas relief until October 2021, nearly twelve years after the limitations period expired.  Thus, his petition is time-barred unless statutory or equitable tolling applies or he qualifies for the miscarriage-of-justice exception to the statute of limitations.

Statutory tolling is not applicable here.  Clark did not file for state post-conviction review until September 2018, nearly nine years after the limitations period expired.  Accordingly, his post-conviction proceeding did not toll the one-year filing deadline under § 2244(d)(2).  *See Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) ("In order for . . . § 2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run."); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)

("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed.").

Clark raises three possible grounds for equitable tolling: his mental health issues, his lack of knowledge of the law, and attorney error. ECF 7 & 9. None of Clark's arguments is persuasive, and equitable tolling is not appropriate here.

First, Clark offers evidence that he has been diagnosed with mental illness, including bipolar disorder, and has been under the care of mental health professionals while incarcerated. The Fourth Circuit has recognized that in rare cases mental incompetency may support the equitable tolling of a habeas limitations period. *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004). "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *Id.* In *Sosa*, the court held that the petitioner's asserted conditions—schizoaffective disorder and generalized anxiety disorder—did not rise to the necessary level. *Id.* Clark, too, has made an insufficient showing that he suffered such an impairment. He has not been found mentally incompetent, and he has not shown that his mental impairment was so severe during the limitations period as to prevent him from timely filing his habeas petition.

Notably, during the ten years between the conclusion of Clark's direct appeal and the filing of his state post-conviction proceeding, Clark was an active litigator in this Court. *See, e.g.*, *Clark v. Jacobs, et al.*, Civ. No. RWT-09-2895; *Clark v. Tessama, et al.*, Civ. No. RWT-10-848; *Clark v. Jacobs*, Civ. No. RWT-11-1555; *Clark v. Bell, et al.*, Civ. No. RWT-11-1558; *Clark v. Gergahte, et al.*, Civ. No. TDC-15-2625; *Clark v. Cander, et al.*, Civ. No. TDC-16-921; *Clark v. Graves*, Civ. No. AAQ-16-2253; *Clark v. McLaughlin, et al.*, Civ. No. TDC-18-81; *Clark v. Beeman, et al.*, Civ. No. TDC-18-90. Clark's ability to litigate his civil rights cases in this Court

belies his contention that his mental illness prevented him from timely filing his habeas petition. When a petitioner has filed other pleadings during the alleged period of mental incompetency, courts have found equitable tolling inappropriate. *See Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005) (unpublished) (finding that although petitioner had "continuing mental health problems" during the period in question, he continued to file litigation in state courts, and equitable tolling was not appropriate); *Walker v. Schriro*, 141 F. App'x 528, 530–31 (9th Cir. 2005) (unpublished) (holding the district court reasonably concluded that petitioner was not entitled to equitable tolling where he made various filings in state court close in time to his AEDPA filing period); *Smith v. Saffle*, 28 F. App'x 759, 760 (10th Cir. 2001) (unpublished) (finding petitioner's ability to file other actions in court defeated his argument for equitable tolling due to mental incompetency).

Second, Clark argues that his late filing should be excused due to his limited knowledge of the law. This is not a valid excuse. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *Sosa*, 364 F.3d at 512 (collecting cases).

Last, Clark contends that his trial attorney is at fault for the late filing of his petition. He offers no factual allegations to support this contention. It is not plausible that Clark's trial counsel, a state public defender appointed to represent him at trial in state court, was responsible for filing a federal habeas petition. Without more, the Court cannot conclude that the conduct of Clark's trial counsel was an extraordinary circumstance that prevented Clark from timely filing his habeas petition.

Clark does not argue that the miscarriage-of-justice exception to the statute of limitations applies.

The petition is dismissed as untimely.

### IV.     Certificate of Appealability

The accompanying Order is a final order adverse to Clark.  Thus, the Court must issue or deny a certificate of appealability.  Rule 11(a), *Rules Governing Section 2254 Cases in the U.S. Dist. Cts.*  Clark must receive a certificate of appealability before an appeal may proceed.  28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court dismisses a habeas petition solely on procedural grounds, as here, a certificate of appealability will not issue unless the petitioner can "demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Clark's pleadings fail to demonstrate that a certificate of appealability should issue.  He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See* Fed. R. App. P. 22(b)(1); *Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

### V.     Conclusion

Clark's motion to amend, ECF 9, is granted, subject to the Court's interpretation of that request.  His habeas petition, ECF 1, is dismissed as untimely.  The Court declines to issue a certificate of appealability.  A separate order follows.

Date: March 30, 2023

_____
Deborah L. Boardman
United States District Judge